IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH   NORTHERN DIVISION

| | |
|---|---|
| DANA JONES,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No: 1:08-cv-149 DN<br><br>Magistrate Judge David Nuffer |

Plaintiff Dana Jones filed suit seeking judicial review of the Commissioner's decision denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.[1] This case is before the magistrate judge by consent of the parties under 28 U.S.C. 636(c). After a careful review of the entire record and the parties' submissions, the magistrate judge concludes that the Commissioner's decision should be affirmed.

Jones applied for SSI on September 21, 2005, claiming she was disabled due to depression, anxiety disorder, social phobia and arthritis.[2] After her claims were denied initially[3] and on reconsideration,[4] Jones requested a hearing before an administrative law judge (ALJ),

---

[1] 42 U.S.C. §§ 1381-1383c.

[2] R. 59, 72.

[3] R. 53.

[4] R. 50.

which was held on March 3, 2008.[5] On April 24, 2008, the ALJ issued a decision finding that Jones had the severe impairments of anxiety related disorders, affective/mood disorders and osteoarthritis of the left shoulder,[6] but was not disabled because she could perform a limited range of light, unskilled work.[7] The Appeals Council denied Jones's request for review,[8] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[9]

**Background**

Jones was 48 years old years old at the time she alleged onset of disability, and she was 51 years old on the date of the ALJ's decision.[10] She did not complete high school, but completed some training in electronic assembly.[11] Jones has worked part-time at a pizza restaurant since April 2006 through at least the date of the hearing in March 2008.[12]

---

[5] R. 303-39.

[6] R. 16.

[7] R. 17-18.

[8] R. 3-5.

[9] *See* 20 C.F.R. § 416.1481.

[10] R. 59.

[11] R. 77 (indicating a tenth grade education); *see also* R. 326 (Jones states she completed eighth grade).

[12] R. 64, 292.

## Analysis

### Requirements of Listings 12.04 and 12.06 and Treating Physician's Opinion

Jones argues that the ALJ erred when he found that she was not disabled under the Listing of Impairments.[13] She claims that she provided sufficient medical evidence to show that her impairments meet or equal the requirements of Listing 12.04 (affective disorders) and Listing 12.06 (anxiety related disorders).

It is true that if a claimant's impairment meets or equals one of the listed impairments, "the claimant is conclusively presumed to be disabled."[14] It is Jones's burden at this step to show that her impairments "meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."[15] In order to meet Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders), Jones must meet the specific requirements of the "A" criteria of each Listing **and** establish the required level of severity, by meeting at least two of the four "B" criteria.[16] There is no argument that Jones has satisfied the "A" requirements of both listings, and the ALJ so found when he determined that Jones had the severe impairments of anxiety related disorders, affective/mood disorders based upon the

---

[13] *See* Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1.

[14] *Bowen v. Yuckert,* 482 U.S. 137, 141 (1987).

[15] *Sullivan v Zebley*, 493 U.S. 521, 530 (1990).

[16] 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04 and 12.06. Part "B" for each listing states:

> Results in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

medical documentation.[17]

Jones argues that she also satisfied the requisite number of "B" requirements for each listing. In support, Jones points to forms listing the requirements for Listings 12.04 and 12.06 completed by her treating physician, Dr. Orin Ogilvie, in which he indicates by check marks that she satisfies at least two of the "B" criteria for each listing.[18] For Listings 12.04 and 12.06, Dr. Ogilvie indicated by that Jones had: (1) Marked restriction of activities of daily living; (2) Marked difficulties in maintaining social functioning; and (4) No repeated episodes of decompensation.[19] Jones asserts that Dr. Ogilvie's opinion that she has satisfied the "B" requirements of Listings 12.04 and 12.06 directs a finding of disability. In conjunction with this argument, Jones also claims that the ALJ "completely ignored"[20] and failed to properly evaluate the opinion of her treating physician.

Contrary to Jones's claim, Dr. Ogilvie's opinion that she met all the criteria and was therefore disabled is not controlling. While a treating physician may offer an opinion that a claimant is disabled, "[t]hat opinion is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]."[21] In this case, the ALJ correctly determined that Dr. Ogilvie's opinion reflected in the forms was not supported by

---

[17] R. 16.

[18] R. 239-41, Exhibit 7F.

[19] *Id.*

[20] Plaintiff's Brief in Support of Petition for Review at 10, docket no. 11, filed April 3, 2009.

[21] *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir. 1994) (citing 20 C.F.R. §§ 404.1527(e)(1)-(2) and 416.927(e)(1)-(2)).

his own treatment notes or the record as a whole.[22]

It is well settled that an ALJ reviewing the opinions of treating sources must engage in a sequential analysis.[23] First, the ALJ must consider whether the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques, and is consistent with other substantial evidence in the record.[24] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[25] But even if it is determined that the opinion is not entitled to controlling weight, that does not mean that the opinion should be rejected.

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927.[26]

The regulatory factors that must be considered are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which

---

[22]R. 23.

[23]*Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003).

[24]*Id.*; Social Security Ruling (SSR) 96-2p; 20 C.F.R. § 404.1527(d).

[25]*Watkins,* 350 F.3d at 1300.

[26]*Id.* (quoting SSR 96-2p).

an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[27]

An ALJ is not required "to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion,"[28] but the decision must provide "good reasons" for the weight ultimately assigned to the opinion.[29]

Here, the ALJ did not completely ignore the opinions of the treating physician. He simply refused to give controlling weight to the portion of Dr. Ogilvie's opinion regarding the severity of her mental impairments under the regulation's four broad functional areas.[30]

> In this case, the undersigned Administrative Law Judge is also not accepting the opinion of Orin Ogilvie, M.D. given at Exhibit 7F, pages 1 through 7 because the opinions given in June and July 2006 of the claimant having marked and extreme limitations in numerous areas of mental functioning . . . are not supported by his own opinion just one month later . . . (see Ex. 12F, pg 12). These findings are also not supported by claimant's reported activities of daily living nor the record whole, as discussed above in detail. Treatment notes and other examinations show a degree of limitation but not to the point suggested by Dr. Ogilvie [in exhibit 7]. For these reasons, Dr. Ogilvie's opinion is afforded little weight in the findings made by the undersigned in regards to the claimant's ability, or lack thereof, to perform work-related activities.[31]

---

[27] *Id.* at 1301 (quoting *Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).

[28] *Oldham v. Astrue,* 509 F.3d 1254, 1258, (10th Cir. 2007).

[29] *Watkins*, 350 F.3d at 1300 -01; 20 C.F.R. § 404.1527(d)(2).

[30] *See* 20 C.F.R. § 404.1520a(c)(3) (Four broad functional areas are: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.").

[31] R. 23.

In Exhibit 7F,[32] Dr. Ogilvie checked that Jones had marked[33] restrictions in activities of daily living for both listings. "Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."[34] Medical records and Jones's testimony confirm that Jones engaged in almost all of these activities on a regular basis[35] while continuing to work a part-time job since April 2006. Although Dr. Ogilvie suggested that Jones had marked limitations in her ability to adhere to basic standards of neatness and cleanliness,[36] his treatment notes show that she generally had "fair" grooming[37] except for two visits, which she appeared "less well groomed."[38] Jones was also able to care for her grooming and hygiene well enough to obtain and maintain work as a food handler.[39] The record does not support that Jones had marked limitations in activities of daily living.

Dr. Ogilvie's opinion that Jones had marked limitations in maintaining social functioning also conflicts with the record as a whole. The record does shows that Jones had experienced

---

[32] R. 239-245.

[33] 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C) (stating "marked" means for than moderate but less than extreme).

[34] 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C)(1).

[35] R. 123-24, 200, 216, 311-12, 317-18, 327.

[36] R. 244.

[37] R. 292, 295.

[38] R. 188, 196.

[39] R. 188, 292, 312.

anxiety at work,[40] but she was still able to take public transportation,[41] and had some contact with friends.[42] Additionally, the prescribed anxiety medication was effective and Jones reported that working at her job "helped" her cope.[43] Further, Dr. Ogilvie acknowledged that Jones did not have any limitations on her ability to accept instructions and respond appropriately to supervisors or to get along with co-workers without distracting them or displaying behavioral extremes, and had slight limitations on the ability to ask simple questions or request assistance, and moderate limitations in her ability to work in coordination with or proximity to others without being distracted by them.[44] Again, the record does not support that Jones's social functioning had reached marked limitations.

Only in regard to affective disorders (12.04), Dr. Ogilvie indicated that Jones had marked limitations in maintaining concentration, persistence, or pace.[45] In contrast, the record shows that Jones was able to perform well enough to maintain employment from April 2006 through the date of the hearing in March 2008. Additionally, Jones reported to another physician that she did not any trouble concentrating.[46] Therefore, the record does not support that Jones had marked limitations in maintaining concentration, persistence, or pace.

---

[40] R. 295.

[41] R. 317-18.

[42] R. 196, 207, 209, 211, 236, 328-29.

[43] R. 292, 297, 299.

[44] R. 244.

[45] R. 240.

[46] R. 268.

Finally, it must also be noted that Jones was scheduled for two consultative examinations to assist in the determination of disability issues.[47] She was non-compliant and failed to appear for each scheduled examination.[48]

Here, the ALJ's finding that Jones did not meet all of the requirements of Listing 12.04 or 12.06 is supported by substantial record evidence. Moreover, after properly evaluating Dr. Ogilvie's opinion, the ALJ provided specific and legitimate reasons for the weight assigned to the treating physician's opinion because it was inconsistent with his own treatment notes[49] and inconsistent with other record evidence,[50] including Jones's reported activities of daily living.

**Residual Functional Capacity**

Jones's final argument is that the ALJ incorrectly assessed her Residual Functional Capacity (RFC). She claims that he ignored medical opinions and evidence from her vocational counselors when he determined that she was capable of performing a range of unskilled light work, with several accommodating restrictions.

The ALJ's RFC assessment does not ignore the medical opinions. In fact, the RFC incorporates many of the limitations noted by Dr. Ogilvie. Based on Dr. Ogilvie's opinions regarding Jones's limitations in her ability to interact appropriately with the general public, and

---

[47] *See Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) ("a consultative examination is often required for proper resolution of a disability claim").

[48] R. 22, 130, 264.

[49] *See Castellano*, 26 F.3d at 1029 (10th Cir. 1994) (treating physician's opinion rejected when unsupported by office notes).

[50] *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (ALJ may discount medical evidence if it is inconsistent with other record evidence).

in her ability to complete a normal workday or work week due to social anxiety,[51] the RFC assessment includes restrictions that she should have essentially no contact with the general public, and only minimal contact with supervisors and co-workers.[52] Due to Dr. Ogilvie's stated limitations in Jones's ability to remember and understand detailed instructions,[53] the ALJ included that she should work at a low concentration level, and perform only unskilled tasks.[54] Because Dr. Ogilvie found that Plaintiff had marked limitations in her ability to perform activities within a schedule (noting that she was unable to keep up with the pace of work at a prior job),[55] the RFC assessment states that she should work at a low production rate.[56]

The RFC also incorporates limitations concerning Jones's more recent left shoulder impairment. The RFC contained restrictions that she should only lift up to 20 pounds (she lifts up to 50 pounds at her current job);[57] no overhead lifting or reaching of any significance with her left arm; and no more than frequent handling, reaching, and fingering with her left hand and arm.[58] Clearly, the ALJ did not ignore the medical opinions when he incorporated them into his RFC assessment.

---

[51] R. 244.

[52] R. 18.

[53] R. 243.

[54] R. 18.

[55] R. 243.

[56] R. 18.

[57] R. 319.

[58] R. 17.

Jones suggests that the ALJ's RFC should have relied upon the non-medical opinions of vocational counselors Daniel Nelson and Connie Tidwell. In an undated letter submitted by Nelson, he states that Jones is unable to maintain employment.[59] Based on this statement and other information in the letter, it appears the letter was written before Jones obtained her job at the pizza restaurant in April 2006. Tidwell's June 2007 letter expressing similar concerns was submitted just shortly after Jones began her current job.[60] Consequently, the counselors' opinions that Jones was unable to maintain employment are not supported by the record showing that Jones has maintained steady part-time employment since April 2006.

After a complete review of the record, it is clear that the ALJ's RFC determination is supported by substantial evidence regarding Jones's impairments.

**ORDER**

IT IS HEREBY ORDERED that ALJ's decision is AFFIRMED because it is supported by substantial evidence and is free of legal error.

March 29, 2010.

BY THE COURT:

_____
David Nuffer
U.S. Magistrate Judge

---

[59] R. 120-21.

[60] R. 122.